**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

CLIENT NETWORK SERVICES, INC.,　　*

　　　**Plaintiff,**　　　　　　　　*

v.　　　　　　　　　　　　　　　*　　　　**Case No.: PWG-15-2207**

STEPHEN A. SMITH,　　　　　　*

　　　**Defendant.**　　　　　　　*

\* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \*

**MEMORANDUM OPINION AND ORDER**

This is a dispute between Plaintiff Client Network Services, Inc. ("CNSI") and its former employee, Defendant Stephen A. Smith, stemming from the termination of CNSI's agreement with the State of Louisiana for CNSI to provide Medicaid Management Information System ("MMIS") services for the state ("LMMIS Agreement"). Pending are CNSI's Motion for Partial Summary Judgment as to Counts I and II of the Complaint, ECF No. 45, and Smith's Cross-Motion for Summary Judgment, ECF No. 46.[1]　I find that neither Smith's whistleblower argument nor his statute of limitations argument bars CNSI's claims on the record before me. Additionally, I find genuine disputes of material facts exist as to all of CNSI's claims. Accordingly, I will deny both parties' motions and this case shall proceed to a bench trial as scheduled.

**Standard of Review**

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored

---

[1] The parties fully briefed the motions. ECF Nos. 45-1, 46, 47, 48.　A hearing is not necessary. *See* Loc. R. 105.6.

information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

When a court is presented with cross-motions for summary judgment, it must "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985). "[T]he facts relevant to each [are] viewed in the light most favorable to the non-movant." *Lynn v. Monarch Recovery Mgmt., Inc.*, No. WDQ-11-2824, 2013 WL 1247815, at *1 n.5 (D. Md. Mar. 25, 2013) (quoting *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003)).

### Discussion

CNSI argues that it is entitled to summary judgment on its Breach of Contract (Count I) and Breach of the Duty of Loyalty (Count II) claims because the relevant material facts are undisputed. Pl.'s Mot. 22, 28. Smith contends that there is no genuine dispute of material facts with regard to CNSI's other two claims, Tortious Interference with Contractual Relations (Count

III) and Civil Conspiracy (Count IV), and therefore he is entitled to summary judgment on those claims. Def.'s Mem. 27, 30. Additionally, Smith insists that CNSI's entire action is barred for two reasons: (1) CNSI's claims are barred due to the modified statute of limitations found in Smith's At Will Employment Agreement ("Agreement"); and, (2) whistleblower protections and public policy require summary judgment to be entered in favor of Smith. *Id.* at 14, 17. I will address Smith's claims first.

*Statute of Limitations*

Smith argues that a clause in his employment agreement with CNSI shortens "the statute of limitations to one year for any claim arising out of [Smith's] employment," and that CNSI learned of Smith's alleged wrongdoing more than a year before it filed suit. *Id.* at 14. CNSI counters that this clause applies only to claims brought by Smith and not those brought by CNSI. Pl.'s Opp'n 13-14. There is no genuine dispute of material fact regarding this issue – only contractual interpretation[2] – and as such, I will resolve this issue as a matter of law.

The clause states, in full:

> <u>Waiver of Jury Trial and Statute Limitations</u>. *The parties hereby expressly waive* any right to a trial by jury for any disputes arising out of Employee's employment with CNSI and/or the termination thereof, regardless of whether or not such disputes specifically arise under this Agreement. *Employee hereby agrees that*

---

[2] The parties agree that Maryland law governs CNSI's four claims, which he brings under Maryland common law. Def.'s Mem. 15; Pl.'s Opp'n 12. Under Maryland law,

> [t]he construction of an unambiguous contract is for the Court alone to determine. *Wells v. Chevy Chase Bank, F.S.B.*, 768 A.2d 620, 630 (Md. 2001). Thus, if the Court determines that a contract is unambiguous on a dispositive issue, "it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." *Cochran v. Norkunas*, 919 A.2d 700, 709 n.8 (Md. 2007) (quoting *Wash. Metro. Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 235 (4th Cir. 2007)).

*Res. Real Estate Servs., LLC v. Evanston Ins. Co.*, No. GLR-16-168, 2017 WL 660800, at *4 (D. Md. Feb. 17, 2017).

*any claim or lawsuit arising out of the Employee's employment with CNSI* and/or the termination thereof, regardless of whether or not such dispute specifically arises under this Agreement, *must be filed within one year after the date of the employment action* that is the subject of such claim or lawsuit and <u>Employee</u> *hereby waives any statute of limitations to the contrary*.

Agr. ¶ 14, ECF No. 1-1 (emphasis added and capitalization removed). This clause is unambiguous. Quite clearly, while referring to time limits and to the modified statute of limitations, the Agreement only references the responsibilities of the Employee. *Id.* ("*Employee hereby agrees* that any claim . . . must be filed within one year . . . . *Employee hereby waives* any statute of limitations to the contrary.") (emphasis added). I find that that the statute of limitations provisions were intended to apply unilaterally to Smith. Unilateral statute of limitations provisions in a contract are permissible under Maryland law when "supported by a 'valid justification.'" *See Storto Enters., Inc. v. Exxonmobil, Oil Corp.*, No. WDQ-10-1630, 2011 WL 231877, at *5 (D. Md. Jan. 24, 2011) (quoting *Walther v. Sovereign Bank*, 872 A.2d 735 (Md. 2005) (finding that a unilateral arbitration clause is enforceable when "supported by a 'valid justification'")); *see also Ceccone v. Carroll Home Servs., LLC*, No. 85, Sept. Term, 2016, 2017 WL 3205290, at *6 (Md. July 28, 2017) ("[T]he validity of a contractual provision that purports to shorten a statutory limitations period is measured by its reasonableness and by whether certain defenses to contract formation can be established. . . . Among the factors to be considered in assessing reasonableness are the subject matter of the contract, the duration of the shortened limitations period compared to the period that would otherwise govern, the relative bargaining power of the parties to the contract, and whether the shortened limitations period is a one-sided provision that applies to one party but not the other."). CNSI does not, however, provide any justification for the unilateral term.

Without any justification, a one-sided term such as this may be substantively unconscionable and, if also procedurally unconscionable, void. *See Freedman v. Comcast Corp.*, 988 A.2d 68, 85 (Md. Ct. Spec. App. 2010) (quoting *Walther v. Sovereign Bank*, 872 A.2d 735 (Md. 2005)). Relevantly, the Agreement provides

> If any term or provision of this Agreement shall, for any reason, be adjudged by any court of competent jurisdiction to be invalid or unenforceable, such judgment shall not affect, impair or invalidate the remainder of this Agreement, but shall be confined in its operation to the provisions of this Agreement directly involved in the controversy in which such judgment shall have been rendered. Notwithstanding the above, it is the intent and desire of the parties that this Agreement and all of its terms be enforceable and in the event any provision as presently set forth is determined to be invalid by a court of competent jurisdiction, the parties hereto agree that this Agreement shall be appropriately modified by the court so that each and every provision hereof is enforceable to the maximum extent permitted by law.

Agr. ¶ 13. Even in the absence of any justification by CNSI for the unilaterally shortened limitations period for Smith's employment-related claims, what is manifestly clear is that, contrary to Smith's arguments, the plain text of the limitations clause demonstrates that the parties did not intend it to apply to claims by CNSI against Smith. Thus, if I were to assume without deciding that this provision was unenforceable, I would disregard it as to any limitation on when Smith could assert claims; I would not modify the clause to create a shortened limitations period for CNSI, when the plain language of the clause did not so limit the time in which CNSI could bring claims against Smith. In sum, I find that the statute of limitations found in Smith's employment agreement with CNSI was intended to apply unilaterally to Smith and that this provision does not bar CNSI's claims.

*Whistleblower Protections*

Smith argues that "public policy-based whistleblower protections require that summary judgment be entered in Defendant's favor," because "Plaintiff seeks to enforce . . . contract

provision[s] that would, if applied, violate clear public policy supporting whistleblower activity" and are "therefore, unenforceable as to the alleged conduct of which Plaintiff complains." Def.'s Mem. 17, 18; *see* Def.'s Reply 5. The provisions at issue state:

> Employee recognizes that Trade Secrets and Confidential Information (as defined below) belong exclusively to CNSI and Employee agrees to hold in strict confidence and not disclose, use, reproduce, distribute transmit, reverse engineer, decompile, disassemble, or transfer, directly or indirectly, any Trade Secrets and Confidential Information, other than as authorized in the performance of Employee's services to CNSI. . . . Employee further acknowledges and agrees that Employee's obligations with respect to Confidential Information shall remain in effect until such time as CNSI publicly discloses the Confidential Information. . . . The term "Confidential Information" as used herein shall mean any and all information not in the public domain, in any form, possessed by, used by, under the control of, or otherwise relating to CNSI, its parent, subsidiary, or affiliate companies, and/or clients of any of them and treated as confidential by CNSI which shall at any time come into possession or control of Employee. Confidential Information may include Trade Secrets.
>
> . . .
>
> During the term of his/her employment and thereafter, Employee agrees not to make any statements, whether written or oral, which could reasonably be interpreted, under the circumstances, as embarrassing, disparaging, prejudicial, or in any way detrimental to the interests of CNSI or its past, present or future owners, officers, directors, employees or agents.

Agr. ¶¶ 1, 9.

Smith argues that various federal courts have found that "a contract provision preventing disclosure of wrongdoing to governmental authorities violates public policy." Def.'s Mem. 18. Smith states that he informed "Branch, an employee of the Federal Center for Medicaid and Medicare Services, of certain misinformation and misrepresentations made in CNSI's bid in response to the LMMIS solicitation." *Id.* at 22. And, Smith insists that he "suspected CNSI was engaging in Medicaid fraud when he sent" the email to Branch. *Id.* at 26. Smith states that he gained knowledge of CNSI's supposed wrongdoing through his position and work at CNSI, "conversations at CNSI," "discussions with the Bank of America," and his own "review[] [of] CNSI's [MMIS] proposal." *Id.* at 8.

In response, CNSI argues that Smith's allegations are not factual and are "based on rumor and innuendo." Pl.'s Opp'n 19. CNSI also argues that Smith "was not subject to any adverse action or retaliation" due to his alleged "whistleblowing." *Id.* CNSI contends that it was Smith who "unilaterally approached CNSI to negotiate his separation from the company" and that "Smith's employment with CNSI was terminated by mutual agreement of the parties." *Id.*

In Maryland, "[a] contractual provision that violates public policy is invalid," but it is "only [invalid] to the extent of the conflict between the stated public policy and the contractual provision." *State Farm Mut. Auto. Ins. Co. v. Nationwide Mut. Ins. Co.*, 516 A.2d 586, 592 (Md. 1986). The Maryland Court of Appeals has recognized "a clearly definable public policy goal" of "protect[ing] those witnesses who report suspected criminal activity to the appropriate law enforcement or judicial authority [i.e., whistleblowers] from being harmed for performing this important public task." *Wholey v. Sears Roebuck*, 803 A.2d 482, 494 (Md. 2002) (emphasis in original removed). CNSI agrees that Maryland has "recognized a limited public policy exception to the at-will employment doctrine that allow[s] an employee to sue a former employer for wrongful discharge *when the employee was fired* for reporting suspected criminal activity." Pl.'s Opp'n 20 n.4 (emphasis added). Essentially, in acknowledging the public policy but focusing on the facts of *Wholey*, which considered the narrow issue of when an employee can sue for wrongful discharge based on the broader public policy of whistleblower protection, CNSI argues that I can conclude as a matter of law that Smith is not entitled to whistleblower protection because the employer did not take any adverse employment action. This argument misses the mark.

The public policy recognized in *Wholey*, which protects whistleblowers "from being *harmed*" (not only from being *terminated*) is, contrary to CNSI's contentions, broad enough to

render unenforceable a contract claim that allows an employer to take action against an employee for whistleblowing. *See Wholey*, 803 A.2d at 494. Stated differently, the contractual provisions that form the basis for CNSI's breach of contract claim are not invalid *only if CNSI took action* in response to the reporting of suspected criminal activity; they are invalid if they *permitted CNSI to take* such action, because permitting CNSI to take any action against an employee for whistleblowing (whether by terminating or suing the employee) would violate the public policy against harming the employee. *See* July 25, 2016 Ltr. Order, ECF No. 23 ("[F]or the contractual provision at issue here to be invalid, *it would have to have allowed CNSI to take action against Smith for reporting suspected criminal activity*." (emphasis added)). Further, as noted, they would be invalid only to the extent that they allowed such conduct, not insofar as they allowed the employer to respond to other employee acts that do not qualify as whistleblowing. *See State Farm*, 516 A.2d at 592.

Reviewing Paragraph 9, it would permit CNSI to sue Smith for breach of contract if he reported suspected criminal activity, as such a report would be a statement that would be "embarrassing, disparaging, prejudicial, or . . . detrimental to the interests of CNSI." *See* Agr. ¶ 9. And, Paragraph 1 would permit CNSI to sue Smith for breach of contract if that report of suspected criminal activity involved the disclosure of trade secrets. *See id.* ¶ 1. Insofar as these clauses allowed such action against Smith, they are invalid. But, insofar as they allowed CNSI to take action against Smith for disclosing trade secrets or making statements that are "embarrassing, disparaging, prejudicial, or . . . detrimental to the interests of CNSI," when the statements or secrets are not part of a report of suspected criminal activity, they are valid. *See State Farm*, 516 A.2d at 592.

Thus, the issue is whether any of Smith's statements qualifies as a report of suspected criminal activity. The *Wholey* Court held that whistleblower protection does not extend to investigation and internal reports because "[t]he public good is best served by *reporting* suspected criminal activity to law enforcement authorities; . . . the mere recognition of a potential problem and gathering of information are not per se in the public interest." *Wholey*, 803 A.2d at 498. Accordingly, reports are protected only if they are made "to the appropriate law enforcement or judicial authority." *Id.* at 494. CNSI argues that Smith also bears the burden of proving that his "actions were based on a reasonable belief that the employer had violated the law." Pl.'s Opp'n 18. CNSI cites *Lawson v. Bowie State University*, where the Maryland Court of Appeals considered what a whistleblower plaintiff had to prove to obtain statutory protection in Maryland, holding that "the burden [fell] upon the employee to prove 'that a reasonable person in his position would believe the disclosure evidence[d] a violation.'" 26 A.3d 866, 875 (Md. 2011) (citation omitted). Smith counters that *Lawson* is inapplicable and *Wholey*, requiring the employee to "suspect[]" criminal activity, provides the "correct standard." Def.'s Reply 6-7. This is a distinction without a difference on the facts before me, as this Court has observed that "Maryland's common law public policy exception to the at-will employment doctrine based on reporting criminal conduct surely anticipates that the employee will act seasonably and *in good faith* in making his report." *Jackson v. Clark*, 564 F. Supp. 2d 483, 495 (D. Md. 2008) (emphasis added). It is clear that, for common law or statutory whistleblower protection, an employee must have had a reasonable basis for making his report; there is no protection for fabricating a report or relaying unsubstantiated rumors. *See id.*; *Lawson*, 26 A.3d at 875. Therefore, for the statements to qualify, (1) Smith must have made them to a proper authority, and (2) he must have

made statements that he reasonably believed to be true. *See Wholey*, 803 A.2d at 494; *see also Jackson*, 564 F. Supp. 2d at 495; *Lawson*, 26 A.3d at 875.

As for the first element, it is undisputed that Smith made statements regarding CNSI to Jeoffrey Branch, Jt. Stmt. of Facts ¶¶ 17, 21, ECF No. 49, and Smith contends that he also spoke about CNSI with Charles Malm, John Hammack, and Norm Nichols, Pl.'s Mot. 8–14, although CNSI disputes whether he spoke with these individuals and if so, in what capacity, Def.'s Mem. 7–8.  The undisputed facts establish that, at the time he communicated with Smith, Jeoffrey Branch was a regional representative for the Federal Centers for Medicaid and Medicare Services ("CMS") who was "leading CMS's review of the proposed LMMIS Agreement between Louisiana and CNSI." Jt. Stmt. of Facts ¶¶ 17, 21.  According to Smith, Malm was an employee of Bank of America; Hammack was an employee of Xerox/ACS, "one of CNSI's competitors in the MMIS marketplace"; and Nichols was the president of Molina Medicaid Services, when he communicated with them about CNSI.  Pl.'s Mot. 8, 10.  From the evidence presently before me, even assuming *arguendo* that Smith spoke with each of these individuals about CNSI and his reasonable belief that the companies' handling of the LMMIS Agreement at least bordered on fraud, it is far from clear that any of these individuals was a law enforcement officer or a judicial authority, as required for whistleblower protection. *See Wholey*, 803 A.2d at 493–94.  Malm, Hammack, and Nichols were businessmen working for private companies. While Branch did work for the federal government, it appears that his employment involved facilitating the proposed LMMIS Agreement, not prosecuting fraud.  Similarly, from the language of the email itself,[3] it is unclear whether Smith was reporting suspected criminal

---

[3] Smith wrote:

> Mr. Branch: I am using a pseudonym in order to remain anonymous because I am
> unclear whether I would be covered by any whistleblower protection and I cannot

activity to someone who could act to enforce the statute criminalizing the conduct, as opposed to coyly undermining the possible success of his employer based upon a subjective desire to pay them back for reducing his salary and position title. The resolution of these disputes requires trial.

With regard to the second element, Smith identifies evidence to support his position that the statements were true and that, in the course of his employment, he garnered this information. *See* Def.'s Mem. 23–26 (citing Ahmed, Chatterjee, Kanwal, and Carroll Deps.); Def.'s Reply 8 (citing Jan. 18, 2017 Smith Dep.; Def.'s Am. & Supp. Ans. to Interrogs.). But CNSI cites evidence that Smith's beliefs were based on nothing more than hearsay statements others made to him, and that he actually did not believe that CNSI committed any fraudulent acts. *See* Pl.'s Opp'n 21 (citing Email to Branch; May 1, 2014 Smith Dep.). Resolution of this dispute also requires trial.

In sum, because the undisputed material facts do not establish that Smith reported suspected criminal wrongdoing to the proper authorities, summary judgment on this ground is

---

lose my employment at this time. I know that you inquired with DHH yesterday regarding the CNSI bond, and I feel compelled to provide to you with what I believe are a number of disqualifiers for CNSI. I am not alleging fraud, but I believe that it is dangerously close to being so. If there is an investigation I believe many people will be implicated and I believe that it is in the best interest of the State of Louisiana and the federal government to vacate the award to CNSI and re-procure the MMIS services.

. . .

The bottom line, Mr. Branch, is that CMS should step in and cancel this procurement and demand that it be re-competed in a fair and unbiased manner. To proceed with the current contract award will be a devastating disaster for the State of Louisiana and the federal government.

Thank you for your consideration and for your service to our country. In the end, remember that 1.2 million financially needy Louisiana residents will be affected by this decision.

Email to Branch, ECF No. 49, at 18.

not appropriate. Moreover, as the above discussion makes it manifestly clear that there are disputes of material fact as to Counts I and II, CNSI is not entitled to judgment as a matter of law on these claims.

*Disputes of Material Fact – Counts III and IV*

As to Smith's argument that there are no genuine disputes of material facts as to Counts III (tortious interference) and IV (civil conspiracy) (for which CNSI did not seek summary judgment, but Smith did), the fully-briefed motions, in which each party identifies various material facts in dispute, show that summary judgment would be inappropriate. To prove tortious interference, CNSI must show, *inter alia*, that a third party interfered with the contract, and that the interference caused damage to the plaintiff. *See Fraidin v. Weitzman*, 611 A.2d 1046, 1057 (Md. Ct. Spec. App. 1992). The parties dispute whether Smith was acting outside the scope of his employment, such that he qualified as a third party rather than CNSI's agent. *See* Def.'s Mem. 28; Pl.'s Opp'n 25. This dispute cannot be resolved without trial. And, whether there is a causal connection between the alleged detrimental consequences and Smith's interference also is a question for the finder of fact, as Smith identifies evidence that there was no causality, *see* Def.'s Mem. 29, and CNSI cites evidence that there was, *see* Pl.'s Opp'n 26. Because these factual disputes exist, Smith has not established that he is entitled to judgment as a matter of law on this claim.

As for civil conspiracy, while it is not a stand-alone cause of action, *see Alleco Inc. v. Harry & Jeannette Weinberg Found., Inc.*, 665 A.2d 1038, 1045 (Md. 1995), this claim may move forward if CNSI prevails on its tortious interference claim, as that could provide the underlying wrongful conduct. *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005) (defining civil conspiracy). Whether there was an agreement between Smith and a third party to

accomplish the wrongful conduct, as needed to prevail on a civil conspiracy, *see id.*, is also an

issue the resolution of which must await trial. The case will proceed to trial.

## **ORDER**

Accordingly, it is, this 8th day of September, 2017, hereby ORDERED, that CNSI's

Motion for Partial Summary Judgment as to Counts I and II of the Complaint, ECF No. 45, and

Smith's Cross-Motion for Summary Judgment, ECF No. 46, ARE DENIED.


_____/S/_____
Paul W. Grimm
United States District Judge


dwc/lyb