# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CLIENT NETWORK SERVICES, INC.,** | * | |
| **Plaintiff** | * | |
| v. | * | Civil Action No. PWG-15-2207 |
| **STEPHEN A. SMITH,** | * | |
| **Defendant** | * | |

******

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff Client Network Services, Inc.'s Motion for Attorneys' Fees ("Plaintiff's Motion") (ECF No. 78). Pursuant to 28 U.S.C. § 636, and Local Rule 301, the Honorable Paul W. Grimm referred this matter to me for the making of a Report and Recommendation concerning the award of attorney's fees. The Court has reviewed Plaintiff's Motion, as well as the opposition and reply thereto. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons stated herein, I recommend an award of attorneys' fees to Plaintiff in the amount of $252,838.00.

### I.   Factual and Procedural Background

Plaintiff prevailed in a three day bench trial. Defendant was an employee of Plaintiff and helped Plaintiff to secure a services contract with the State of Louisiana. At some point, Defendant became dissatisfied with his employer. By way of deception and subterfuge, Defendant caused the destruction of the contractual relationship between Plaintiff and the State of Louisiana. This resulted in litigation between Plaintiff and the State of Louisiana on the claims arising from Defendant's misdeeds. Eventually, Plaintiff and the State of Louisiana

agreed to binding arbitration, where Plaintiff won an award of over $26,000,000.00 against the State.

In the present suit, Plaintiff prevailed on its claims of breach of contract, breach of a duty of loyalty, and tortious interference with a contractual relationship. Defendant prevailed on the claim of civil conspiracy and arguments regarding any award for punitive damages. The Court required the disgorgement of over $100,000.00 paid to Defendant as salary and bonus while he was employed by Plaintiff. The Court also determined that Plaintiff was entitled to attorneys' fees under Paragraph 10 of the At Will Employment Agreement between the parties. Specifically, the clause states that Plaintiff "shall be entitled to recover all damages and losses, including attorney's fees and costs, incurred by it as a result of or arising from Employee's breach or threatened breach" of this contract.

Plaintiff now seeks attorney's fees in the amount of $380,365.50. Defendant is of the view that the Court should award no more than $14,453.89. Defendant contends that Plaintiff achieved only "minimal success" in light of the claims alleged. Defendant states that Plaintiff's Complaint sought damages of more than $30,000,000.00, yet won a judgment which represents less than one percent of the amount sought. Defendant notes that the amount requested by Plaintiff for attorney's fees is nearly four times the amount of the judgment and is therefore unreasonable.

## II. Legal Standard

Courts in the United States follow the "American Rule" when it comes to the award of attorney's fees. In essence, a prevailing party must pay their own attorney's fees unless there is a fee shifting statute or a contractual obligation. See Myers v. Kayhoe, 391 Md. 188 (2006).

When a request for attorney's fees is based on a fee shifting statute, the Court will generally follow a "lodestar" approach. In that regard, federal courts in the Fourth Circuit have followed the precedent from the Fifth Circuit set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). The Johnson decision requires the Court to consider twelve factors in determining appropriate relief.

In a fee petition that is based upon a contractual relationship, such as the contract at issue here, the Court looks to a very similar listing of eight factors found in the Maryland Attorneys' Rules of Professional Conduct ("MARPC"). The rule is set forth below:

> a) An attorney shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
>
>> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>>
>> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the attorney;
>>
>> (3) the fee customarily charged in the locality for similar legal services;
>>
>> (4) the amount involved and the results obtained;
>>
>> (5) the time limitations imposed by the client or by the circumstances;
>>
>> (6) the nature and length of the professional relationship with the client;
>>
>> (7) the experience, reputation, and ability of the attorney or attorneys performing the services; and,
>>
>> (8) whether the fee is fixed or contingent.

MARPC 1.5 (Md. Rule 19-301.5). Since reasonableness is the touchstone for the award of fees, the party seeking the award of fees "must provide 'detailed records' that specify 'the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged.'" Bel Air Plaza Ltd. P'ship v. Ross Dress for Less, Inc., Civ. No. CCB-14-2533, 2016 WL 3440191, at *1 (D. Md. Jun. 23, 2016) citing Rauch v. McCall, 134 Md. App. 624, 639 (2000)(citation omitted).

In order to recover for attorney's fees, counsel must submit appropriate materials supporting his or her claim. This typically includes billing records and affidavits regarding the services provided. Plaintiff has done so here. It is then the responsibility of the party challenging the request for fees to articulate the areas where an award would be inappropriate. "The Court will not review any challenged entry in the bill unless the challenging party has identified it specifically and given an adequate explanation for the basis of the challenge." Thompson v. U.S. Dept. of Hous. and Urban Dev., No. MJG-95-309, 2002 WL 31777631, at *10 (D. Md. Nov. 21, 2002).

When a claim for attorney's fees is filed in the federal court in Maryland, there is an extra layer of complexity arising from the Court's adoption of its Local Rules. "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases," App. B, Local Rules (D. Md. 2016) (the "Guidelines"). The Guidelines address the format for filing the fee request, the recording of time and the submission of quarterly statements. They also provide direction regarding what is compensable and non-compensable time. For the convenience of counsel, these Guidelines list a presumptive range of reasonable hourly rates. "Generally this Court presumes that a rate is reasonable if it falls within these ranges." Gonzales v. Caron, Civ. No. CBD-10-2188, 2001 WL 3886979, at *2 (D. Md. Sept. 2, 2011).

### III. Analysis

While Plaintiff's claim for attorneys' fees arises from contract law, it is still reasonable to borrow a construct from the fee-shifting cases of the federal statutes. Namely, the Court should first identify the number of hours reasonably expended and multiply it by a reasonable hourly rate. Next, fees or hours should be subtracted for labors spent on unsuccessful claims that are unrelated to the successful ones. Finally, the Court should award some percentage of the remaining amount based on the degree of the success obtained. Johnson v. City of Aiken, 278 F.3d 333, 337 (4th Cir. 2002) (citing Hensley v. Eckerhart, 461 U.S. 424 (1983)).

#### A.  Time and Labor Required, Novelty, and Requisite Skill

Considering the first factor under the Maryland Attorneys' Rules of Professional Conduct, the Court should be concerned with "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly." Certain aspects of this case required the involvement of counsel with commendable skills. There were certain issues that were rather novel as set forth in the observations of Judge Grimm during the trial. Given the parallel proceedings in the State of Louisiana, it was important for counsel to stay abreast of those proceedings and to understand the interplay with the issues at hand in the Maryland litigation. With those factors in mind, Plaintiff had various levels of experienced counsel staffing this case.

Plaintiff attacks the Declaration of Henry A. Platt, Esquire (ECF No. 80-2) which sets forth the education, skill, experience and billing rates for those providing legal services to Plaintiff. The leader of Plaintiff's trial team was Henry Platt, a practicing attorney of more than 28 years of experience. The affidavits and supporting materials indicate that he has participated

in a host of jury and bench trials, with deep experience in labor and employment, as well as commercial litigation. He has participated in trial and appellate work and was named one of "D.C.'s Super Lawyers for Employee Litigation" for calendar years 2014-2017. For the three years that this litigation existed, he billed at rates of $535.00, $550.00, and $575.00 per hour. For the sake of simplicity I will consider a blended rate of $553.00 per hour for Mr. Platt. While not quite as experienced, but certainly carrying a great deal of the litigation load, Plaintiff was also assisted by Matthew Antonelli. Mr. Antonelli has five years of experience and has handled a number of commercial litigation cases in state and federal courts. Over the same three year period, Mr. Antonelli billed at the rates of $275.00, $295.00, and $325.00 per hour for a blended rate of $298.00 per hour. Services were also provided by Ian McLin, who has one year of experience as an attorney and he billed at $225.00 per hour. Finally, Plaintiff's trial team was assisted by paralegal Jennifer Hibner-Spencer who billed at $245.00, $255.00 and $265.00 per hour for a blended rate of $255.00 per hour. Ms. Hibner-Spencer has 33 years of experience in litigation services.

In addition to the declaration of Mr. Platt, Plaintiff provides the Affidavit of Albert D. Brault (ECF No. 80-3). Mr. Brault is well-known to this Court as an esteemed practitioner who enjoys a national reputation as to litigation matters. Mr. Brault opines that the rates charged by Plaintiff's counsel are reasonable for the metropolitan areas of the District of Columbia and Baltimore, Maryland and "in line with rates charged by lawyers with similar experience in commercial litigation in this area." Brault Aff. ¶ 12. Moreover, he states that the rates are lower than the standard hourly rates charged by other firms from the District of Columbia which had been approved by a certain Circuit Court judge in Montgomery County, Maryland.

As noted earlier, the Guidelines apply different presumptive rates to the fees applicable to counsel with the varying degrees of experience. Here, the rate for Mr. Platt would be capped at $475.00 per hour, Mr. Antonelli at $300.00 per hour, Mr. McLin at $225.00 per hour, and Ms. Hibner-Spencer at $150.00 per hour. While not discrediting the sworn statements of Plaintiff's counsel or Mr. Brault, the Court is of the view that the Guidelines are appropriate and more representative of a broader range of practitioners appearing in the federal court in Maryland. The Court appreciates that the rates reflected in the Guidelines are not annually adjusted and that these rates have been constant since the inception of the present litigation. I am recommending payment of fees at the top-end of each Guideline category. The net result is a discounting of fees for Mr. Platt in the amount of $78.00 per hour and Ms. Hibner-Spencer by $105.00 per hour. The rates of Mr. Antonelli and Mr. McLin would not be adversely affected. Similarly, I do not propose adopting the approach suggested by Defendant, whose counsel all billed at a flat rate of $325.00 per hour.

The Court will now consider the number of hours reasonably expended. Turning to the challenged time entries, Defendant notes the general prohibition in the Guidelines against "double billing" for certain tasks, specifically depositions. Mr. Platt and Mr. Antonelli attended the deposition of Mr. Smith. Plaintiff seeks an award of fees for the presence of both attorneys. The Guidelines disfavor the practice of compensating more than one attorney for attending a deposition. It states, "Only one lawyer for each separately represented party shall be compensated for attending depositions." Local Rule, App. B(2)(b). The explanatory footnote describes a scenario where seeking fees for two lawyers is permitted, specifically where it is shown that the presence of the less senior attorney is needed because of his involvement and

superior knowledge of the organization of "numerous documents important to the deposition, but the deposition is of a critical witness whom the more senior attorney should properly depose."

There is no dispute but that here, it was the less senior attorney who organized the documents and conducted the deposition. Plaintiff contends that the attendance of the more senior attorney was necessary for oversight, and resulted in an overall net savings. While such a scenario is plausible, I am of the view that the drafters of the Guidelines fully appreciated this possible arrangement, but were not persuaded that it should result in compensable time for both attorneys. Accordingly, I recommend providing no compensation for Mr. Platt's attendance at the deposition of Mr. Smith. This results in a reduction of 7.5 hours of Mr. Platt's time.

Defendant also seeks an adjustment based on the presence of both lawyers and the paralegal during the trial phase of the litigation. While accepting the reasonableness of having two attorneys, Defendant contends that the presence of the paralegal should fall into the "clerical, administrative or secretarial" category, resulting in the denial of the request for Ms. Hibner-Spencer's fee charges.

Case law makes clear that "clerical work" should not be compensated as an award for attorney's fees. "Fees for work performed by paralegals are generally recoverable, but only 'to the extent they reflect tasks traditionally performed by an attorney and for which the attorney would customarily charge the client,'" Kabore v. Anchor Staffing, Civ. No. L-10-3204, 2012 WL 5077636, at *4 (D. Md. Oct. 17, 2012) (quoting Hyatt v. Barnhart, 315 F.3d 239 (4th Cir. 2002)).

Plaintiff's argument regarding the services provided by Ms. Hibner-Spencer at trial is rather thin. Plaintiff's Motion states that she "provided valuable support by assisting in

organization of exhibits and witness outlines, and by taking notes at counsel's direction." Pl.'s Mem. in Supp. 12. In its Reply, Plaintiff adds that these tasks "otherwise would have been performed by a lawyer," and that her services were more than merely secretarial. Pl.'s Reply 13. In Plaintiff's formatted fee petition, (ECF No. 80-1, p. 41), there are notations for the three days of trial time. Each entry merely states that Ms. Hibner-Spencer was attending trial (and on the first day, she worked on projects for use on the following day).

While I am of the view that the presence of a paralegal at trial can be invaluable, I cannot on this record conclude that said work here was not more secretarial in nature, nor more appropriately performed by a second attorney. It is the duty of the party seeking fees to provide the evidence necessary for the Court to evaluate the reasonableness of the fees. <u>Atlantic Contracting and Material Co. v. Ulico Cas. Co.</u>, 380 Md. 285, 316 (2004). Therefore, I recommend providing no compensation for Ms. Hibner-Spencer's presence at trial. This would result in a reduction of her time in the fee petition by 30.1 hours.

Similarly, the Court accepts most of Defendant's criticism across the balance of fees attributable to Ms. Hibner-Spencer. Defendant has submitted a highlighted version of Plaintiff's formatted fee petition, (ECF No. 83-1), bringing attention to the work of Ms. Hibner-Spencer that it contends is not compensable attorney's fee work. With the exception of details provided in the Motions Practice and Trial Preparation sections of Plaintiff's formatted fee petition, the Court agrees that the descriptions are more akin to clerical functions. In the sections titled Motions Practice and Trial Preparation, the Court believes the work described therein is likely a blend of legal and clerical. Therefore, I recommend awarding half of the fee request for the services of Ms. Hibner-Spencer as set forth in those sections. These areas total 36.2 hours, resulting in a net of 18.1 hours.

9

More generally, I do not find that the preparation time allotted to the deposition of Mr. Smith to be inappropriate as suggested by Defendant. As stated earlier, the case was rather complex, with novel issues and included the need to review and become extremely acquainted with the record from Mr. Smith's previous testimony in the parallel litigation. The time associated with the task, across timekeepers, was reasonable.

### B. Non-relevant Factors in Determining a Reasonable Fee

In considering the other factors set forth under the Maryland Attorneys' Rules of Professional Conduct, there are several factors that are not significant here. These include: factor 2 - "the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the attorney;" factor 5 - "the time limitations imposed by the client or by the circumstances;" factor 6 - "the nature and length of the professional relationship with the client;" and, factor 8 - "whether the fee is fixed or contingent." I also believe that I have adequately covered factors 3 and 7 in the previous section, namely "the fee customarily charged in the locality for similar legal services," and the "experience, reputation, and ability of the attorney or attorneys performing the services." Accordingly, I will turn to another overarching issue, "the amount involved and the results obtained."

### C. The Amount Involved and the Results Obtained

The degree of success is measured by two reference points, namely the amount sought and the damages and relief awarded. The Court must give "primary consideration to the amount of damages awarded as compared to the amount sought" in order to "constrain a court's discretion in setting an award." Doe v. Chao, 435 F.3d 492, 506 (4th Cir. 2006) (internal quotations and citations omitted). "Indeed, the most critical factor in determining the

reasonableness of a fee award is the degree of success obtained." Id. Furthermore, the comparison should "be with the relief sought, not the relief most important to the plaintiff. The court must therefore view the entirety of the suit objectively." Western Insulation, LP v. Moore, 362 Fed. App'x 375, 381 (4th Cir. 2010) (citations, internal quotations, and emphasis omitted).

While Plaintiff here sought "forfeiture, disgorgement and restitution" of compensation paid to Defendant, it would strain credulity to deny that the overwhelming driver for the litigation was the pursuit of tens of millions of dollars in damages flowing from Defendant's wrongful conduct. This battle was far more than a "principle fight" to determine that Defendant was merely disloyal, or that he merely breached a contract, or that he merely interfered with another contract. This fight was supremely about the recovery of very substantial damages. The fact that Plaintiff abandoned that quest less than thirty days before trial does not diminish the more than two years of substantial exposure Defendant faced.

It is true that Plaintiff prevailed on three of the four causes of action. Under the breach of contract claim, Plaintiff sought $30 million in damages and attorneys' fees and costs. Under the breach of the duty of loyalty claim, Plaintiff sought $30 million in damages, the disgorgement of compensation paid, attorneys' fees and costs. With the tortious interference and civil conspiracy claims, Plaintiff sought $30 million in damages, punitive damages, attorneys' fees and costs. Plaintiff lost no ground by not prevailing on the civil conspiracy claim, as the remedy sought is identical to the remedy Plaintiff prevailed on, namely the tortious interference claim. Plaintiff did not prevail with respect to any award of punitive damages. Considering the nature of the claims at issue, I am left with the conviction that the evidence and labors required to establish any of Plaintiff's claims was substantially the same evidence and labor required for the fourth claim. Simply put, there is a core of relevant facts that were identical across the board. So it was

11

not as if Plaintiff's efforts would have been any different had Plaintiff not filed the civil conspiracy claim.

The present facts do not approximate those set forth in Green v. Torres, 361 F.3d 96 (2d Cir. 2004). In Green, Plaintiff withdrew claims for which there was no factual support. It appears as though the plaintiff in Green was overzealous in his pleadings without any realistic expectation of success. Here, accepting the argument of the defense, Plaintiff's misstep was in failing to have an appropriate expert available to testify in support of a complicated damages calculation. Whether Plaintiff's actions were strategic, merciful, or merely unsupportable, the decision whether to make a downward adjustment in Plaintiff's request for fees is within the sound discretion of the Court. As stated in Monmouth Meadows:

> [I]ndeed when applying Rule 1.5, trial judges should consider the amount of the fee award in relation to the principal amount in litigation, and this may result in a downward adjustment. Although fee awards may approach or even exceed the amount at issue, the relative size of the award is something to be evaluated.

Monmouth Meadows Homeowners Ass'n., Inc. v. Hamilton, 416 Md. 325, 337 (2010).

The Court must grapple with Plaintiff's decision not to pursue over $30 million in damages on the eve of trial. The Court must determine whether this was because of the pendency of Defendant's Motion in Limine or due to Plaintiff's stated strategic election to streamline the trial, and in consideration of Defendant's limited assets.

On July 28, 2015, Plaintiff filed the Complaint seeking more than $30 million. According to Plaintiff's trial exhibit No. 22 and the trial record, the arbitration award from the proceedings in Louisiana was issued in June of 2017. Yet, as of September 1, 2017, Plaintiff was still seeking over $26 million from Defendant plus punitive damages, as it was entitled to pursue said sums from Defendant since the State of Louisiana had not paid the award. Plaintiff

12

expressed this intention to proceed against Defendant for this sum in the Proposed Joint Pretrial Order (ECF No. 61). In the same document, Defendant was raising the alarm that Plaintiff had not reduced its damage claim despite the arbitration award. Therefore, on the same date, Defendant filed a motion in limine seeking to strike Plaintiff's claim to damages of over $26 million. Defendant's argument was premised on Plaintiff's alleged failure to identify any expert witness who could testify to the claimed damages. A week later Plaintiff abandoned its claim to $26 million (ECF No. 64).

It is not difficult to appreciate that it is typically easier to litigate a case where the monetary damages at stake are a mere $100,000.00 versus $24 million. Plaintiff's Reply notes that it was the limited nature of Defendant's assets that was important in the decision to "simplify" the case. Pl.'s Reply 5. This justification rings hollow. If Plaintiff did not know of Defendant's financial wherewithal during his season as an officer in Plaintiff's employment, then it surely possessed said knowledge by the close of discovery. See id. Yet, one month before trial, Plaintiff was still seeking a multi-million judgment, plus punitive damages, and attorneys' fees.

Plaintiff had three months to consider the impact of the arbitration award on the present case. Plaintiff affirmatively pursued the full amount of its potential damages in its representation to the Court in the Proposed Pretrial Order. It is only after Defendant filed the motion in limine that Plaintiff took the issue off the table. I conclude that the sequence of events more fully supports Defendant's version of the facts and motivations than Plaintiff's.

In trying to measure the degree of Plaintiff's success, I therefore start with the original sums demanded in the Complaint and the actual monetary award provided. Here the question is

13

what percentage of a reduction is appropriate. In Green, the plaintiff abandoned five inflated claims and dropped charges against two of the defendants. The plaintiff there received an award of $50,000.00 in compensatory damages and $8,500.00 in punitive damages. Thereafter, the plaintiff in Green sought $275,000.00 in attorneys' fees for claims of police misconduct. The court reduced the fees by a total of 20%.[1] Similarly, in Andrade v. Aerotek, 852 F. Supp. 2d 637 (D. Md. 2012), the plaintiffs sought $288,000.00 in fees. The court reduced the fee claim by 25% to reflect the relatively low degree of success. In that action, the plaintiffs were pursuing claims under the Fair Labor Standards Act for a national class, but won only $14,000.00 in back pay for eight people regarding "off-the-clock" claims. The plaintiffs had originally pursued "misclassification claims" as well as the "off-the-clock" claims. Finally, in Heltzel v. County of Prince William, 89 F.3d 169 (4th Cir. 1996), the court noted that the plaintiff had sought $9 million in damages and injunctive relief, but only received a pittance of the damages claimed. The plaintiff pursued discrimination claims against her employer police department and did not prevail on most of her claims. In vacating the award for $500,000.00 in damages due to a limited evidentiary record, the court also vacated an award for $176,000.00 in fees. The court stated that "a reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Id. at 173 (quoting Hensley v Eckerhart, 461 U.S. 424, 439-40 (1983).

In light of these decisions I recommend that Plaintiff's request for attorneys' fees be reduced by 20%. Plaintiff's monetary award of slightly more than $100,000.00, is a mere pittance of its claim to over $30 million, plus punitive damages,

---

[1] It is also interesting to note that the original reduction of 50% of the attorney's fees claim was reversed on appeal.

One additional factor that Plaintiff seeks to have considered is that it elected not to pursue fees here for the litigation fees incurred in the State of Louisiana which the court stated on the record that Plaintiff would be entitled to receive. While it is fair to believe that the fees associated with the case in Louisiana would be very substantial, the inference raised by Plaintiff's argument is that it should receive the benefit of a more fulsome fee award in this litigation because of its election not to pursue fees regarding the litigation in Louisiana. The Court has no record evidence as to what the actual fees incurred in the other litigation may be. As noted from the outset of this recommendation, in order to receive attorneys' fees the prevailing party "must provide detailed records that specify the services performed, by whom they were performed, and the time expended thereon and the hourly rates charged." Rauch v. McCall, 134 Md. App. 624, 639 (2000). To give full value to Plaintiff's claims here when it elected not to include supporting materials for the Court to consider, would be inappropriate. The Court cannot award monies in such a vacuum.

At the end of the day, the Court's calculations are as follows. Mr. Platt sought fees for 387.8 hours and the Court is deducting 7.5 hours for his attendance at the deposition of Defendant Smith. Therefore he is entitled to compensation 380.3 hours. Mr. Antonelli's hours were not changed by the fee challenge and remain at 433.6 hours, and Mr. McLin has a total of 11.6 hours. The total recommended hours for Ms. Hibner Spencer is 18.1. Considering the billable hours rate of Mr. Platt at $475.00, Mr. Antonelli at $300.00, Mr. McLin at $225.00 and Ms. Hibner-Spencer at $150.00, the total request for fees would be $316,047.50. Applying the downward adjustment of 20% to reflect the measure of success obtained, the net fees to be awarded would be $252,838.00.

**IV. Conclusion**

In light of the factors to be considered under the Maryland Attorneys' Rules of Professional Conduct and the degree of success obtained by Plaintiff in this significant litigation, it is my recommendation that Plaintiff be awarded attorneys' fees in the amount of $252,383.00.


February 23, 2018                                          /s/
                                                   Charles B. Day
                                                   United States Magistrate Judge