IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **CLIENT NETWORK SERVICES, INC.,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PWG-15-2207 |
| **STEHPEN A. SMITH,** | * | |
| Defendant. | * | |
| | *** | |

## MEMORANDUM OPINION AND ORDER
## ADOPTING REPORT AND RECOMMENDATION

Following a three-day bench trial, I entered a preliminary order of judgment in favor of Plaintiff Client Network Services, Inc. ("CNSI") and against Stephen Alan Smith for nominal damages for the termination of CNSI's contract with a non-party and order of disgorgement of Mr. Smith's salary and "success bonus." Prelim. Or. J., ECF No. 74. I entered judgment in favor of Mr. Smith on CNSI's claim for punitive damages. *Id.* After CNSI moved for attorneys' fees, I referred this motion to Magistrate Judge Charles Day for a report and recommendation. Judge Day issued a thorough and well-reasoned recommendation, ECF No. 88. Plaintiff has objected to Judge Day's recommendations regarding a reduction in the hourly rate for Mr. Platt's services and Judge Day's reduction of overall fees by twenty percent. Pl.'s Obj., ECF No. 89. Mr. Smith objects to (1) Judge Day's recommended rates for Mr. Antonelli and Mr. McLin because they were calculated at rates in excess of their years of experience and (2) Judge Day's recommendation to reduce Plaintiff's attorneys' fees by only 20 percent. Def.'s Obj., ECF No. 90. I find, on *de novo* review, that the Magistrate Judge's report and recommendations were correct with the exception of the hourly rate used for Mr. McLin, and therefore, overrule both parties remaining objections. Because I find that Mr. McLin's hours were compensated at too

high a rate, I adopt the report and recommendation with modifications, and award CNSI attorneys' fees in the amount of $252,142.00.

**Legal Standard**

The Court reviews *de novo* any portions of a magistrate judge's R&R to which a specific objection is made, 28 U.S.C. § 636(b)(1), but may adopt, without explanation, any of the magistrate judge's recommendations to which no objections are filed, *Solis v. Malkani*, 638 F.3d 269, 274 (4th Cir. 2011) (citing *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983). Any objection to a magistrate judge's findings and recommendations must be served and filed within fourteen days of their issuance. Fed. R. Civ. P. 72(b)(2); *see also* Loc. R. 301.5(a). Absent a timely objection, the Court need "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

**Discussion**

The Fourth Circuit recently articulated the procedure by which attorneys' fees are awarded in *Randolph v. Powercomm Constr. Inc.*, 715 F. App'x 227, 230 (4th Cir. 2017):

> First, "the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Id.* (internal quotation marks omitted). "To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)." *McAfee*, 738 F.3d at 88. Second, "the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.* (internal quotation marks omitted). When "all claims involve a common core of facts much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Brodziak v. Runyon*, 145 F.3d 194, 197 (4th Cir. 1998) (alterations, ellipsis, and internal quotation marks omitted). Third, "the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88 (internal quotation marks omitted).

"[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). In determining whether the lodestar results in a reasonable fee, this Court evaluates "the twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)." *Thompson*, 2002 WL 31777631, at *6 (footnotes omitted). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *6 n.19 (citing *Johnson*, 488 F.2d at 717–19). However, the Supreme Court has noted (and experience awarding attorneys' fees has confirmed) that the subjective *Johnson* factors provide very little guidance and, in any event, that "'the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'" *Perdue*, 559 U.S. at 551, 553 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 549, 566 (1986)).

Overall, Mr. Smith does not object to Judge Day's recommendations on any of the line item billing entries or for the rate he awarded fees to Mr. Platt, a Partner at Saul Ewing and the senior attorney representing Plaintiff. Therefore, I adopt Judge Day's recommendations as to Mr. Platt's hourly rate and the line item billing entries. *See Solis*, 638 F.3d at 274; *Diamond*, 416 F.3d at 315.

*Mr. Antonelli and Mr. McLin's Hourly Rates*

Mr. Smith specifically objects to the hourly rates Judge Day recommended for two of CNSI's attorneys, Mr. Antonelli and Mr. McLin. Def.'s Obj. 2–3. The Local Rules of this Court provide guidelines as to what a presumptively reasonable billing rate is, based upon the number of years of practice of an attorney, paralegal, or law clerk, and Judge Day applied each attorney's experience to those guidelines to determine the appropriate rate.

Appendix B to this Court's Local Rules, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases, provides the following "Guidelines Regarding Hourly Rates":

> a. Lawyers admitted to the bar for less than five (5) years: $150–225.
> b. Lawyers admitted to the bar for five (5) to eight (8) years: $165–300.
> c. Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225–350.
> d. Lawyers admitted to the bar for fifteen (15) to nineteen (19) years: $275–425.
> e. Lawyers admitted to the bar for twenty (20) years or more: $300–475
> f. Paralegals and law clerks: $95-150.

Loc. R. App'x B ¶ 3 (footnote omitted). However, these rates are guidelines, not mandatory and exist "solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees." Loc. R. App'x B n.6. The Court may also consider "affidavits of lawyers in the [relevant] legal community attesting to the customary rates charged for [similar matters]." *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509–10 (D. Md. 2000).

Mr. Antonelli has been admitted to the bar for 5 years and he billed at rates between $275.00 and $325.00 over three years. For work prior to his fifth year (two years of this litigation), the Local Rules would permit Mr. Antonelli to charge a maximum of $225.00 and for his fifth year (the final year of the litigation), Mr. Antonelli would be permitted to charge up to $300.00. I do not find that Judge Day erred in finding that a blended rate of $298 was

appropriate. For the period prior to his reaching five years' experience as an attorney, Mr. Antonelli was billing at a higher rate than the Local Rules allowed. For the period after his fifth year, his highest billing rate was slightly higher than the highest rate in the authorized range. But, Mr. Antonelli completed a substantial amount of work on this case as demonstrated by the billing statements and a large percentage of those hours were completed in 2017. Billing Statements 35–37, ECF No. 80-1 (demonstrating that more than half of Mr. Antonelli's hours were billed in the 2017 calendar year—his fifth year practicing law). Moreover, CNSI has provided a declaration from Albert D. Brault, an experienced and highly regarded Maryland attorney, wherein Mr. Brault attests that the rates charged by Plaintiff's attorneys "are lower than the standard hourly rates charged by other firms in the District of Columbia, and are lower than rates that have been approved as reasonable by the Circuit Court for Montgomery County, Maryland in commercial cases." Brault Decl. ¶ 12, ECF No. 80-3. Therefore, I will adopt Judge Day's recommendation to award fees to Plaintiff for Mr. Antonelli at a blended rate of $298 per hour given the number of hours he spent on this litigation; many of those hours were completed as an attorney with five years of experience; a rate of $298 appears to be lower than the standard rates by other firms and approved by the state court; and that rate is still within the Court's Local Rules for attorneys of his current level of experience.

However, Defendant properly states that Mr. McLin was awarded fees at too high a rate. Mr. McLin graduated from law school in 2017 and began working as an associate in the Litigation Department of Saul Ewing in September of that year. Platt Decl. ¶ 10, ECF No. 80-2. Mr. McLin also is admitted to practice in Virginia, *id.*; however, Mr. Platt's declaration does not say when he was admitted. According to Plaintiff's records, Mr. McLin completed 11.6 hours of work from September 18, 2017 to September 22, 2017. Billing Statements 35–37, ECF No. 80-

5

1. However, it is more likely than not that Mr. McLin was not admitted to the bar at that time. Having graduated in 2017 and having begun working at Saul Ewing in September 2017, it is likely that Mr. McLin sat for the bar examination in late July 2017. In September, Mr. McLin likely did not know if he passed his examination let alone been sworn into the Virginia State Bar. *See e.g.,* Virginia Board of Bar Examiners, *Upcoming Dates*, *http*://barexam.virginia.gov/dates.html (last visited August 1, 2018) (stating that results from the July 2018 bar examination would be released on October 19, 2018 and the Admissions Ceremony would be held on December 5, 2018). Given this uncertainty, I will give Defendant the benefit of the doubt that Mr. McLin was a law clerk, and therefore, I will award fees at a rate of $150.00 per hour. Plaintiff is awarded a total of $1,740.00 for Mr. McLin's 11.6 hours (11.6 x $150.00). Therefore, the adjusted lodestar amount is equal to $315,177.50.

*Success and Overall Reduction*

Finally, Judge Day applied a 20 percent reduction overall to the adjusted lodestar amount because of the amount of damages Plaintiff originally sought and the results achieved. R&R 10–15. However, Plaintiff has objected to this reduction, arguing that it is too great, Pl.'s Obj. 2, ECF No. 89; and Defendant has argued that an even greater reduction was required, Def.'s Obj. 3–4. Given these objections, I have completed my own analysis and, keeping in mind the Fourth Circuit's precedent in *Randolph*, have determined that a 20 percent reduction was appropriate. *See* 715 F. App'x at 230.

First, I agree with Judge Day that Plaintiff prevailed on three of its four causes of actions in this case. That alone would indicate that Plaintiff was highly successful; however, Plaintiff did initially pursue significantly larger damages ($26,086,328) than it was awarded ($101,538.38). Further, Plaintiff continued to pursue an award of approximately $26 million up

until the pre-trial conference. *See* Marginal Or. Approving Jt. Pretrial Or. as Edited, ECF No. 66 (demonstrating that the $26 million request for damages was withdrawn by Plaintiff at the pre-trial conference). Therefore, some reduction for degree of success is warranted. However, Defendant argues that I should only award Plaintiff 17.71 percent of the adjusted lodestar amount. Def.'s Obj. 4. To do so, would be arbitrary given the contentious nature of this litigation and would create a windfall for Defendant.

First, throughout this case Plaintiff's attorneys have worked diligently on behalf of their client, but at almost every turn, they were met by Mr. Smith's vigorous defense. Prior to a three-day bench trial, Defendant filed a motion to dismiss, ECF No. 20; a motion for summary judgment (as a cross motion to Plaintiff's motion for partial summary judgment), ECF No. 46; and an omnibus motion in limine, ECF No. 62, which included three motions.[1] I do not draw attention to Mr. Smith's vigorous defense to say that he should have refrained from any of these filings, but to demonstrate that Plaintiff was required to respond commensurately to all of Mr. Smith's actions in order to receive the judgment it did. As I mentioned at trial, both counsel brought with them a great deal of skill and zeal and it is without question that this case was challenging and expensive. *See* Excerpt of Trial Tr. 2:9–24, ECF No. 79.

Second, Plaintiff sought remedies for Mr. Smith's breach of contract and a breach of the duty of loyalty. Both causes of actions implicate important societal norms regarding the relationship between an employer and employee, and the importance the duty of loyalty owed to an employer, and its related obligation to preserve confidential business information of the employer. *Weichert Co. of Md., Inc. v. Faust*, 19 A.3d 393, 324–25, 400 (Md. 2015) (holding that "the duty of loyalty is an implied duty read into every contact of employment, and requires

---

[1] Defendant's motions were supported by approximately 60 pages in memoranda and 130 pages of exhibits.

that an employee act solely for the benefit of his employer in all matters within the scope of employment, avoiding all conflicts between his duty to the employer and his own self-interest.") (internal quotations omitted); *BEP, Inc. v. Atkinson*, 174 F. Supp. 2d 400, 406 (D. Md. 2001) ("This concern for the integrity of the employment relationship has led courts to establish a rule that demands of a high level employee an undivided and unselfish loyalty to the corporation. The Court of Appeals has accordingly read into every contract of employment an implied duty that an employee must act solely for the benefit of his employer in all matters within the scope of employment, . . . .") (citing *Maryland Metals, Inc. v. Metzner*, 382 A.2d 564 (Md. 1978)).

Mr. Smith owed a duty to CNSI and violated it in a manner that resulted in substantial monetary and reputational injury. The fact that CNSI ultimately prevailed in its arbitration with the state of Louisiana, Excerpt of Trial Tr. 58:9-12, (a success that, as of the time of trial, had not resulted in actual payment to CNSI) made it reasonable for CNSI initially to seek the much higher damages. The decision on the eve of trial to abandon those monetary claims in no way diminished the complexity of the litigation or the importance of the overall success it achieved on the claims on which it prevailed. In these circumstances, to take a cleaver to the attorneys' fees as Mr. Smith urges me to do would reward his disloyalty, and prove to be a disincentive to other companies taking action to deal with a turncoat employee. That would not serve the public interest.

For that reason, I believe a twenty percent reduction properly takes account of the difference between the monetary recovery initially sought and actually awarded, without disregarding the important but less tangible value of the result that CNSI obtained at trial.

After applying this 20 percent reduction to Judge Day's reductions and my modification of the fee award as to Mr. McLin's hourly rate, Plaintiff is awarded $252,142.00 in attorneys' fees.

**Conclusion**

For the aforementioned reasons, it is this 23rd day of August, 2018, ORDERED that

1. Plaintiff Client Network Services, Inc.'s Motion for Attorneys' Fees, ECF No. 78, IS GRANTED;

2. Judge Day's Report and Recommendation, ECF No. 88, BE, and HEREBY IS, ADOPTED AS AN ORDER OF THE COURT, as modified above, and Plaintiff Client Network Services, Inc. is awarded $252,142.00 in attorneys' fees; and

3. The Clerk of the Court shall CLOSE this case.

It is so ordered.

                                                          /S/
                                          Paul W. Grimm
                                          United States District Judge

jml